**Leonard C. HARRIS, pro se, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 97–283T.**

United States Court of Federal Claims.

Aug. 11, 1999.

*Opinion and Order*[1]

WEINSTEIN, Judge.

This tax refund case, brought pursuant to 28 U.S.C. § 1491(a)(1), is before the court on the parties' cross-motions for summary judgment. Plaintiff, a physician and calendar-

---

1. This opinion originally was filed unpublished on June 30, 1999. On July 16, 1999, defendant moved to publish this opinion. Plaintiff has not filed an opposition to this request. The opinion is now issued for publication.

year taxpayer, appearing *pro se*,[2] seeks a refund of federal income tax, interest, and penalties for his taxable years 1987, 1988, and 1989, in the amount of $8,991.96.[3] Alternatively, plaintiff seeks recovery based upon an "account stated" claim for his 1987 tax year. For the reasons discussed below, the court finds that plaintiff's claims do not merit relief.

### Facts

The relevant facts set forth below are not in dispute.

#### 1. *1987 Tax Year*

On August 14, 1991, plaintiff filed his delinquent 1987 tax return. The return was prepared and signed by John O'Brien, a paid preparer. Plaintiff's 1987 return reported a tax liability of $2,872, withholding of $3,193, and an overpayment of $321. Plaintiff reported no income from wages and only Schedule C business income.

Plaintiff sought to apply his claimed $321 overpayment for 1987 to his 1988 estimated tax. However, because plaintiff's 1987 return, filed on August 14, 1991, was filed after April 15, 1989, the Internal Revenue Service (IRS) did not post this sum to plaintiff's 1988 account.[4] Instead, the IRS refunded this sum to plaintiff in connection with plaintiff's 1987 tax year.

Because the IRS was unable to locate plaintiff's 1987 Form W–2,[5] plaintiff's claimed withholding of $3,193 in estimated taxes was not credited, at first, to plaintiff's 1987 account. Therefore, on September 23, 1991, the IRS also assessed penalties and interest against plaintiff's 1987 account in the amount of $2,968.51. Plaintiff's taxes, penalties, and interest were paid by a carry back, applying an overpayment credit of $7,248.90 from withholdings with respect to plaintiff's 1991 account.

On October 15, 1994, plaintiff filed an amended 1987 return, seeking a refund for his 1987 tax year and claiming that his Schedule C gross receipts should be reduced by $19,723.34 and taxed as wages.[6] The amended return included a copy of plaintiff's Form W–2 for 1987. However, plaintiff presented no documentary evidence to support his refund claim.

During the "9452 cycle" (the 52nd week of 1994), the IRS credited plaintiff's claimed withholding of $3,193 to plaintiff's 1987 account, effective retroactively to April 15, 1988. The IRS also fully abated the penalties and interest assessed for plaintiff's 1987 taxes.

On January 9, 1995, the IRS mailed plaintiff a computer-generated notice entitled "Statement of Change to Your Account." The letter stated that the $3,193[7] credit and $4,370.90 in interest and penalty abatements to plaintiff's 1987 account, totaling $7,563.90, would be refunded to plaintiff "if you owe no other obligations."

---

2. Plaintiff states that he is currently incarcerated for reasons unrelated to this case.

3. None of these returns was timely filed, all having been filed in 1991, and thus after April 15 of the year following the taxable year. Payments of estimated taxes may not be made after April 15th of the subsequent tax year. *See* 26 U.S.C. §§ 6402, 6513.

4. Despite plaintiff's employment of a professional tax preparer, plaintiff was unable to provide any evidence supporting his claims with respect to the 1987 return.

5. Taxpayers receive a Form W–2 from their employer. The form lists the total compensation paid to the employee and the federal, state, and social security tax withheld from this income.

6. For 1987, plaintiff's taxable income was $0, due to his many deductions. The only taxes he owed were self employment taxes of $2,872 (taxed at 13% of his net profit of $22,059.) If $19,723.34 of plaintiff's Schedule C income were characterized as wages, plaintiff's net profit (after deductions) would be reduced to almost $0 and hence he would get almost a full refund of his self employment taxes.

7. Plaintiff's 1987 Form W–2 lists withholding of $3,139.06. The IRS, however, credited $3,193 to plaintiff's account. It appears that someone inadvertently transposed the numbers, although it is not clear from the record which sum actually was withheld from plaintiff's 1987 wages. Whichever amount is correct, the outcome in this case is unchanged, because the amount credited by the IRS of $3,193 exceeds the claimed withholding of $3,139.06.

During the course of reviewing plaintiff's 1987 return, the IRS also reviewed plaintiff's 1991 return, and subsequently selected it for audit. On April 11, 1995, the IRS reversed the overpayment credit of $7,248.90 that had been applied to plaintiff's 1987 account and returned the money to plaintiff's 1991 account because of possible examination adjustments for 1991.

On April 10, 1995, the IRS denied plaintiff's refund claim for the 1987 tax year for the following, among other, reasons: (1) the IRS already had adjusted plaintiff's 1987 account in the amount of $3,139.06 (his federal withholding that year); and (2) plaintiff provided no support for his claim that his Schedule C gross receipts should be reduced by $19,723.34 and taxed as wages.

On July 17, 1995, the IRS issued plaintiff a refund of $345.25 for his 1987 tax year.

### 2. *1988 Tax Year*

On October 9, 1991, plaintiff untimely filed his 1988 tax return, reporting a tax liability of $259. In his delinquent 1988 return, plaintiff sought to carry forward the claimed $321 overpayment from 1987, leaving an overpayment of $62. Plaintiff then sought to apply the $62 overpayment for 1988 to his 1989 estimated tax. Because plaintiff's 1987 return was not timely, however, the IRS did not post the claimed $321 overpayment for 1987 to plaintiff's 1988 account. (The amount of $321 was refunded, instead, with respect to plaintiff's 1987 account.) Therefore, there was no $62 overpayment for 1988.

On November 4, 1991, the IRS mailed plaintiff a correction for plaintiff's 1988 tax year, setting forth the amount of underpaid tax, penalties, and interest for 1988 ($509.82). The IRS collected these sums by transferring funds from plaintiff's 1991 withheld amounts.

Although plaintiff has produced a copy of a purported amended return for 1988, dated October 15, 1994, neither the original nor a copy of the original are contained in the IRS's administrative files.

### 3. *1989 Tax Year*

Plaintiff filed his delinquent 1989 tax return, reporting a tax liability of $175, on November 2, 1991. Plaintiff sought to apply the claimed $62 overpayment from 1988 to his 1989 account, leaving $113 owed by plaintiff for 1989. However, the IRS did not post the claimed carryforward of $62 to plaintiff's 1989 account because it depended upon plaintiff's claimed carryforward of $321 from 1987 to 1988, which the IRS had denied. Plaintiff was assessed penalties and interest for his 1989 tax year of $217.34. These sums were paid by transferring funds from plaintiff's 1991 account.

As with respect to tax year 1988, plaintiff has produced only a copy of a purported amended return for 1989 and has alleged no evidence to establish that it actually was filed or that the date on the return is correct. Neither the original nor a copy of the original are contained in the IRS's administrative files. (Nor is there any evidence that the IRS disallowed any such refund claim).

### *Applicable Law*

Summary judgment is appropriate when the court finds both that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c) of the Rules of the United States Court of Federal Claims (RCFC); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact preventing summary judgment is one that is relevant and necessary to establishing or defending against the claim and that may affect the outcome of the decision; an issue is genuine if a reasonable finder of fact could decide the question in favor of the non-movant. *See KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1449 (Fed.Cir. 1993); *Opryland USA Inc. v. Great Am. Music Show, Inc.*, 970 F.2d 847, 849–50 (Fed. Cir.1992).

Summary judgment is not a disfavored means of resolving disputes; on the contrary, it is an "integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*,

477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1); *see also Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1560 (Fed.Cir.1988); *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed.Cir.1987). The fact that both parties have moved for summary judgment, however, does not relieve the court of its responsibility to determine the appropriateness of summary disposition. *See Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed.Cir.1988).

■ In every tax refund suit, the findings of the Commissioner of Internal Revenue are presumptively correct. The taxpayer bears the burden of proving, not only that it overpaid its taxes, but also the amount of the overpayment. *See United States v. Janis*, 428 U.S. 433, 440, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); *Helvering v. Taylor*, 293 U.S. 507, 515, 55 S.Ct. 287, 79 L.Ed. 623 (1935); *Lewis v. Reynolds*, 284 U.S. 281, 283, 52 S.Ct. 145, 76 L.Ed. 293 (1932); *Transamerica Corp. v. United States*, 902 F.2d 1540, 1543 (Fed.Cir.1990).

### Discussion

1. *Jurisdiction*

A refund suit in this court must be filed within two years of the IRS' notice of disallowance. *See* 26 U.S.C. § 6532(a). The IRS' notice of disallowance was sent on April 10, 1995; plaintiff filed his complaint on January 6, 1997. Therefore, plaintiff filed his complaint within this two year limitations period.

Initially, defendant argued that plaintiff's complaint was barred by this two year limitations period. However, on August 5, 1998, the court granted plaintiff's motion to amend the filing date of the complaint, from April 16, 1997, to January 6, 1997. Subsequently, defendant withdrew its contention that plaintiff's claim was barred by the two year statute of limitations.

■ However, it appears that plaintiff's refund claim would be barred by the statute of limitations set forth in 26 U.S.C. § 6511. Under 26 U.S.C. § 7422(a), in order to file a refund suit, the taxpayer must have filed with the IRS a timely refund claim. Under 26 U.S.C. § 6511, a refund claim is timely if filed within three years of the original return or within two years of the payment of the tax, whichever is later. Here, plaintiff filed his 1987 tax return on August 14, 1991. He filed his 1987 refund claim on October 15, 1994. Therefore, plaintiff's refund claim was not filed within the three year statutory period. Thus, this court lacks jurisdiction over the 1987 refund claim. *See* 26 U.S.C. § 7422(a).

■ As for 1988 and 1989, there is no credible evidence in the record that plaintiff filed refund claims for these years. The IRS's administrative files, which are presumed to be true, accurate, and correct, *see Sun Oil Co. v. United States*, 215 Ct.Cl. 716, 572 F.2d 786, 805 (1978), contain no record of refund claims for 1988 or 1989. Moreover, because a refund claim is jurisdictional, plaintiff bears the burden of proving that he filed a refund claim. *See Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir.1991). Plaintiff's copies of purported amended returns for 1988 and 1989 are plainly insufficient to carry this burden. *See* 26 U.S.C. § 7502; *Surowka v. United States*, 909 F.2d 148, 150 (6th Cir.1990). In any event, plaintiff has presented no evidence of proper addressing and mailing of these returns. Accordingly, the court also lacks jurisdiction with respect to plaintiff's claims for 1988 and 1989.

Even if the court had jurisdiction over plaintiff's refund claim, plaintiff has failed to allege evidence credible to a finder of fact to establish his entitlement to refunds for 1987, 1988, and 1989. The key return in this action is plaintiff's 1987 return, because plaintiff's refund claims for 1988 and 1989 both depend upon a carryforward from 1987.

The IRS did not post the plaintiff's claimed carryforward of $321 from 1987 to 1988, as plaintiff claims he requested, for the simple reason that plaintiff filed his return after April 15, 1989, the due date for making estimated payments for 1988. *See* 26 U.S.C. §§ 6402, 6513. Instead, the IRS refunded this sum to plaintiff in connection with his 1987 tax year. Similarly, the IRS did not post plaintiff's claimed carryforward of $62 from 1988 to 1989, because it, in turn, de-

pended upon the claimed carryforward of $321 from plaintiff's 1987 tax year.

Plaintiff's claim that his 1987 income from wages was reported incorrectly as Schedule C business income also would have to be rejected. As the IRS found in dismissing plaintiff's 1987 refund claim, plaintiff, who bears the burden of proving his entitlement to a refund, *see Janis*, 428 U.S. at 440, 96 S.Ct. 3021, has provided no evidence to support this contention. Plaintiff's mere assertion that his reported 1987 Schedule C income of $91,330.00 contained wages of $19,723.34 plainly is insufficient to satisfy plaintiff's burden of proof. Plaintiff has produced no documentary evidence to support this claim, such as his 1099 forms [8] for 1987. Plaintiff has not produced any documents generated during the preparation of his 1987 tax return by a tax professional to support his position that plaintiff's 1987 return inaccurately classified his wages. In sum, by merely offering his own conclusory allegations, plaintiff has failed to carry his burden of proof on this issue. *See Celotex*, 477 U.S. at 325, 106 S.Ct. 2548 (a party may obtain summary judgment by demonstrating an absence of evidence to support the nonmoving party's case).

### 2. "Account Stated" Claim

On the other hand, the court does have jurisdiction over plaintiff's "account stated" claim because it does not require a refund claim and can be brought within this court's general six-year limitations period. *See West Publ'g Co. Employees' Preferred Stock Ass'n v. United States*, 198 Ct.Cl. 668, 672 (1972); *see also* 28 U.S.C. § 2501. Because plaintiff has raised an "account stated" claim for the 1987 tax year based on the same facts, the statute of limitations for refund claims does not apply with respect to his "account stated" claim for that year.

In any event, plaintiff's "account stated" claim is without merit. An account stated assumes the existence of an implied contract that is formed "when a debtor (the [Internal Revenue] Service) submits to a creditor (the taxpayer) a statement of the final balance due on an account and the creditor agrees to accept the proposed balance to close the account." *West Publishing*, 198 Ct.Cl. at 675.. An account stated arises only after the IRS "[has] the chance to pass on the [taxpayer's] claim and has made a definite decision in its favor." *Id.* at 676.. To prove an account stated, the taxpayer must show "beyond peradventure" that the Government has in fact agreed to pay a stated sum and communicated this intention to the taxpayer. *Id.* Where the statement of account is "provisional and tentative," there is no agreement. *See R.H. Stearns Co. v. United States*, 291 U.S. 54, 66, 54 S.Ct. 325, 78 L.Ed. 647 (1934).

Plaintiff's account stated claim is based on the January 9, 1995, computer-generated notice sent to him by the IRS with respect to tax year 1987. The notice stated that plaintiff would receive a refund of $7,563.90 "if you owe no other obligations" and "unless there are other matters pending which could postpone your refund." Other matters were in fact pending, including continued adjustments to plaintiff's 1987 tax account and a review of plaintiff's 1991 return. In fact, even if the refund had been made, the United States could have sued for an erroneous refund. *See* 26 U.S.C. § 7405. The government also has the right of set off for amounts owing the government in the same tax year. *See United States v. Munsey Trust Co.*, 332 U.S. 234, 239, 108 Ct.Cl. 765, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947) ("The government has the same right which belongs to every creditor to apply unappropriated monies of his debtor, in his hands, in extinguishment of the debts due him.").

The qualifying language in this letter shows that the IRS had not made a definite decision or final promise in plaintiff's favor. Even the final sum of the refund, if any, was uncertain. Because this statement of account is "provisional and tentative," it cannot be said that the IRS agreed "beyond peradventure" to pay the stated sum. *See R.H. Stearns*, 291 U.S. at 66, 54 S.Ct. 325 (no account stated in certificate of overassess-

---

**8.** The Form 1099 reports miscellaneous (*i.e.*, non-salary) income paid to a taxpayer, including business income. Several different 1099 forms are used for different types of income.

ment sent with the understanding that it would be set off against an earlier tax year); *West Publishing,* 198 Ct.Cl. at 676; *see also United States v. A.S. Kreider Co.,* 313 U.S. 443, 448–49, 61 S.Ct. 1007, 85 L.Ed. 1447 (1941) (no account stated in certificate of over assessment stating that a refund was time-barred); *Daube v. United States,* 289 U.S. 367, 372, 53 S.Ct. 597, 77 L.Ed. 1261 (1933) (no account stated where no notice of schedule of refunds and credits given to taxpayer). The account stated concept should not be enlarged through "latitudinarian construction." *See West Publishing,* 198 Ct.Cl. at 676 (quoting *Daube,* 289 U.S. at 372, 53 S.Ct. 597).

Nor has plaintiff established that the notice was issued by anyone with authority to bind the government to a settlement. The notice states that it was issued by the IRS's Philadelphia, Pennsylvania office. Tax disputes may be settled only by the Commissioner of Internal Revenue or his authorized delegate. *See* 26 U.S.C. §§ 7121–7122. Plaintiff has neither alleged nor offered evidence that anyone with authority to bind the government issued the January 9, 1995, notice.

Finally, plaintiff did not accept the alleged offer. Plaintiff must show that "a balance was struck in such circumstances as to import a promise of payment on the one side and acceptance on the other." *A.S. Kreider,* 313 U.S. at 448, 61 S.Ct. 1007. Plaintiff has neither alleged nor offered evidence that he either accepted, or changed his position in reliance on, the alleged offer. Therefore, the January 9, 1995, notice was not an enforceable account stated.

### Conclusion

For the foregoing reasons, defendant's motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied. The Clerk of the Court shall enter judgment in favor of defendant.[9]

---

9. The transcript of plaintiff's 1991 account indicates that plaintiff still owes assessed tax, interest, and penalties of $2,437.25 for the 1991 tax year. Because the IRS has not filed a counterclaim for this sum, the court does not address this issue.