Whaley, Chief Justice,
delivered the opinion of the court:
By Senate Resolution 185 of November 10,1941 (77th Congress, 1st Session) there was referred to this court for action in accordance with the Tucker Act, Act of March 3, 1887 (24 Stat. 505), as amended by the Act of March 3, 1911, the claim of certain taxpayers, Senate Bill S. 1645.
The plaintiffs involved in these proceedings filed petitions in this court pursuant to Senate Resolution 185 under docket numbers Congressional 17767 to Congressional 17844, inclusive. Six of the parties named in Senate Bill S. 1645 failed to file petitions.
Under Section 151 of the Judicial Code, the court is authorized to make a report to the Senate of its determination of the facts involved together with its conclusions as to whether the claims are legal or equitable, or are gratuities— merely an advisory report for the assistance or guidance of the Senate in its proper consideration of the merits of bill S. 1645.
Some of the seventy-two plaintiffs involved filed returns under the War Revenue Act of June 13,1898 (c. 448, 30 Stat. 448), and the others filed returns under the Emergency Revenue Act of October 22,1914 (c. 331, 38 Stat. 745), and paid the taxes shown due on those returns. Subsequent to the filing of their returns, other taxpayers similarly situated contested the interpretation by the Commissioner of Internal Revenue of these Acts under which they, as well as these plaintiffs, had made payments of these taxes. The contro *857 versy was decided in 1922 adversely to the Commissioner. Fidelity and Deposit Company of Maryland v. United States, 259 U. S. 296.
At that time a large number of cases was pending in the courts and in the Internal Bevenue Bureau on claims for refund timely filed. These cases were disposed of by the refunding of the amount of the overpayments shown due pursuant to a computation under a formula agreed upon by the Secretary of the 'Treasury and the Attorney General. Plaintiffs, however, were not given refunds for the reason that proof of the filing of timely claims for refund was not furnished. That deficiency in proof still exists. The over-payments resulting from the application of the principle of law laid down in the case just referred to are set out in our findings and show overpayments in all of the seventy-two cases except two wherein there are small underpayments. What we have therefore is the situation often met, where demands are made for determined overpayments and such demands are refused because of the bar of the statute of limitations.
When refunds were denied by the Commissioner, these plaintiffs sought relief through various bills introduced in Congress. Four of those bills were reported favorably and one bill passed both Houses of Congress but was vetoed by the President. Spokesmen for the Government have consistently opposed these bills on the general ground that these taxpayers are no more entitled to refund of the determined overpayments than any other taxpayer or class of taxpayers who failed to protect themselves against the running of the statute and that it would be inequitable to remove the bar in isolated cases. In his veto message of bill S. 694 the President said in part—
* * * Again I must express my belief that the field of special legislation should not be opened to relieve special classes of taxpayers from the consequences of their failure to perfect their claims for the refund of taxes within the period fixed by law.
See Senate No. 105,74th Congress, 1st Session.
It is clear from what we have said that no legal basis exists under which recovery can be had. The statutes in effect at *858 the time required the timely filing of claims for refund and those statutes must be complied with. Tucker v. Alexander, 275 U. S. 228. The fact that there is a determined overpayment and that other taxpayers similarly situated, except as to the bar of the statute of limitations, have received refunds does not save the situation for plaintiffs. United States v. Andrews, 302 U. S. 517.
Nor do we think that equitable grounds exist merely because some other taxpayers have come within the statute and been granted refunds. The statement in the President’s veto message seems to us sound wherein he stated that to allow refunds in these cases “discriminates against the whole body of Federal taxpayers, and establishes a precedent which would open the door to relief in all cases in which the statute operates to the prejudice of a particular taxpayer, while leaving the door closed to the Government in those cases in which the statute operates to the disadvantage of the Government.”
The plaintiffs are not entitled to either legal or equitable relief. The claims are for gratuities. Whether plaintiffs are to have relief is solely within the wisdom and sound discretion of the Congress.
It is ordered that the special findings of fact, conclusion of law, and the foregoing opinion of the court be transmitted to the Senate, in accordance with the act of March 3, 1911, 36 Stat. 1087, 1138 (Sec. 151 of the Judicial Code, Sec. 257, Title 28 of the United States Code) amending the Act of March 3, 1887, 24 Stat. 505, 507.
Madden, Judge; Whitaker, Judge; and Littleton, Judge, concur.
Jones, Judge, took no part in the decision of this case.